IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROGER PATRICK, #173079, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-132-MHT |
| | ) | (WO) |
| | ) | |
| ALA. DEPT. OF CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Roger

Patrick ("Patrick"), an indigent state inmate.[2]  In the instant complaint, Patrick presents

state law claims of medical malpractice and negligence.  Patrick also alleges that the

defendants violated his Eighth Amendment rights when they advised him he tested positive

for HIV based on an erroneous test result.[3]  Doc. No. 1-1 at 4-5.  Patrick names the Alabama

Department of Corrections, Cedric Swinney, a medical technologist, Marianne Baker, a

Certified Registered Nurse Practitioner, Jacqueline Jones, a Registered Nurse, and Yolanda

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the
docketing process.

[2]Patrick initiated this case by filing a complaint in the Circuit Court of Montgomery County, Alabama.  The
defendants removed the case to this court pursuant to 28 U.S.C. § 1441(a).

[3]The actions about which Patrick complains occurred during his incarceration at Kilby Correctional
Facility.

Temple, also a Registered Nurse, as defendants in this cause of action. He seeks declaratory relief and monetary compensation from the defendants. Doc. No. 1-1 at 5-6.

The defendants filed a special report, supported by relevant evidentiary materials, in which they deny violating Patrick's constitutional rights and further argue their actions did not violate state law. After receipt of the defendants' special report, the court issued an order directing Patrick to file a response to the arguments set forth by the defendants, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 16 at 2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. No. 16 at 3. Patrick filed a response to the defendants' special report on May 1, 2017. Doc. No. 17.

Pursuant to the directives of the order requiring a response from the plaintiff, the court now construes the defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Co., Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (the moving party discharges his burden by showing that the record

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants have met their evidentiary burden. The burden therefore shifts to Patrick to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison [medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification

of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Sec'y of*

*the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (holding that summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Patrick's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record, including the allegations in the complaint, the evidentiary materials filed in support of the defendants' special report and the plaintiff's response to the report. After such review, the court finds that Patrick has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. THE ALABAMA DEPARTMENT OF CORRECTIONS

Patrick names the Alabama Department of Corrections as a defendant in this action. The law is well-settled that the State of Alabama and, by extension, any agency of the State is absolutely immune from suit. *Papasan v. Allain*, 478 U.S. 265 (1986) (Unless the State or its agency consents to suit, the plaintiff cannot proceed against the such defendant as the

action is proscribed by the Eleventh Amendment and "[t]his bar exists whether the relief sought is legal or equitable."). Any claims lodged against the Alabama Department of Corrections are therefore frivolous as such claims are "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Consequently, the claims presented by Patrick against the Alabama Department of Corrections provide no basis for relief in this action as to the constitutional claims presented in the complaint. The court therefore turns to Patrick's claims against the individual defendants.

## IV. DISCUSSION

### A. Material Facts and Claims for Relief[5]

Patrick entered the Alabama prison system in September of 2015 and was initially housed at the Kilby Correctional Facility. As part of the medical screening process, Patrick, along with other inmates, provided blood samples to a phlebotomist who labeled the samples and submitted them to the in-house medical lab at Kilby for testing. Defendant Swinney performed the initial test on the blood sample labeled with Patrick's name. This test indicated a positive result for HIV. Swinney then forwarded this sample to a free-world lab for a second test. This second test confirmed that the sample labeled with Patrick's name tested positive for HIV.

On September 23, 2015, defendant Baker met with Patrick and explained the lab results to him. Defendant Temple thereafter provided Patrick a pamphlet on HIV and referred him to a physician on the internet to discuss his diagnosis. Subsequently, Baker

---

[5] The facts and claims are gleaned from the complaint.

received information that a labeling error had occurred with Patrick's first blood sample and that a second blood sample obtained from Patrick on November 4, 2015, had tested negative for HIV. Baker again spoke to Patrick at which time she advised him of the labeling error and informed him that his second blood sample tested negative for HIV. At some point, Patrick spoke to defendant Jones regarding the erroneous lab results whereupon she simply stated he suffered no harm because no medication had been prescribed to him.

Correctional medical personnel notified the Alabama Department of Public Health that Patrick's initial blood sample tested positive for HIV. A physician with the health department evaluated Patrick in October of 2015. Other health department officials contacted Patrick on two occasions to obtain the names of his sexual partners and, at some point, advised these individuals of Patrick's HIV-positive test result.

Patrick complains the medical defendants acted with deliberate indifference when they relied on the "misdiagnoses" of his initial sample "as being HIV positive" and provided this information to the Alabama Department of Public Health. Doc. No. 1-1 at 2. He also alleges the actions of the medical defendants constituted cruel and unusual punishment. Doc. No. 1-1 at 5. Patrick asserts that "[b]eing misdiagnosed with HIV caused Plaintiff to undergo psychiatric treatment . . . for PTSD . . . and thoughts of suicide. . . . Plaintiff is suffering [further] harm due to the damage to his relationships" resulting from the Alabama Department of Public Health notifying his sexual partners he had tested positive for HIV. Doc. No. 1-1 at 4.

## B. Deliberate Indifference

To prevail on a claim alleging improper actions by medical personnel, an inmate must—at a minimum—show that the defendants acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under applicable federal law, neither medical malpractice nor negligence equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from

criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish a cognizable claim of "deliberate indifference . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). To proceed on a claim of deliberate indifference, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330-33 (1986); *Estelle*,

429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla. Dep't of Corr.*, No. 10-21890-CV, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, No. 6:12-cv-766-Orl-37GJK, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012) (finding that misdiagnosis of inmate with Ganglion cyst which "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed

to mere negligence. . . .  At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, No. CIV. 1:99CV83, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.  Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.") (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)).

In addition, "to show the required subjective intent . . ., a plaintiff must demonstrate that the [defendant] acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things: 'aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted) (alterations in original). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  When medical personnel attempt to diagnose and treat an inmate, the mere fact that the diagnosis "was [improper . . . does not mean that those responsible

14

for it were deliberately indifferent." *Massey v. Montgomery Cty. Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotations omitted).

Defendant Swinney addresses the plaintiff's complaint as follows:

> In September of 2015, Mr. Patrick had his initial intake screening at the Kilby Correctional Facility. The initial intake screening involves, among other things, having blood drawn by the phlebotomist who thereafter forwards the blood sample to me for the blood sample to be tested for various medical issues.
>
> As the medical technologist, I have nothing to do with drawing the blood. The blood is drawn and labeled by the phlebotomist and not by me. I had nothing to do with drawing the blood of Mr. Patrick or labeling the blood of Mr. Patrick.

Once the labeled blood specimen had been forwarded to me, I ran an initial in-house screening that showed to be positive for HIV. If a specimen shows to be positive on the initial in-house screening, it is forwarded out to Bio Reference to be rescreened.

We received confirmation from Bio Reference that the specimen labeled as Mr. Patrick's had in fact been confirmed as HIV positive.

The report setting forth that Mr. Patrick's specimen had in fact tested positive for HIV was forwarded onto the Health Services Administrator ("HSA") and I presume to Marianne Baker, CRNP.

I at no time had any communications or correspondence with Mr. Patrick with regard to the positive results of his labeled specimen.

Between September 2015 and November 2015, Mr. Patrick, to my knowledge, never requested to be retested in relation to the positive labeled specimen.

In November 2015, an inmate returned to the lab to be screened due to the fact that he was to be released from his incarceration with the Alabama Department of Corrections.

The initial in-house screening reported positive for this particular inmate. However, the inmate had been screened some two months previously and his sample had reported as negative. Therefore, I looked at the inmate's records, and he in fact had been screened immediately behind Mr. Patrick in September 2015. Thereafter, I called the Department of Health in Montgomery and was informed that they were already aware that the inmate to be released had in fact tested positive for HIV.

Due to the fact that the individual to be released was immediately behind Mr. Patrick at the time that [Mr. Patrick's] initial sample was taken, Mr. Patrick was called back to the lab to have his blood retested.

Once again, the phlebotomist drew Mr. Patrick's blood, had the sample labeled, and forwarded it to me for testing.

I in fact communicated with Mr. Patrick during his second blood testing and Mr. Patrick said absolutely nothing to me about his initial positive reading.

The second specimen taken of Mr. Patrick was retested by myself in-house and thereafter forwarded to Bio Reference where it was confirmed that the second specimen labeled Patrick had in fact tested negative. Once I received confirmation of the negative results from the second test, I forwarded the information onto the HSA.

Subsequently, the HSA organized a meeting between the HSA, myself and Mr. Patrick.

At that meeting, I informed Mr. Patrick that the blood specimen had been mislabeled, mistakenly, and the individual behind him in the initial intake had his blood mislabeled [for] that of Mr. Patrick's.

During my meeting with Mr. Patrick, he did not appear to be troubled or perplexed and really said nothing during our meeting.

Again, as the medical technologist, I did not withdraw the blood specimen or label the blood specimen of Mr. Patrick.

It is my understanding that the blood specimen taken of Mr. Patrick became mistakenly and inadvertently mislabeled with the inmate's sample behind him. The mistake, I am sure, was inadvertent and was in no way intentional. However, again, I had nothing to do with taking the sample from Mr. Patrick or labeling the sample of Mr. Patrick.

Doc. 15-1 at 2-5 (internal paragraph numbering omitted).

Nurse Baker submitted an affidavit and a relevant medical record in response to the complaint filed by Patrick. She addresses his allegations, in relevant part, as follows:

I am aware that Mr. Patrick claims that he suffered harm after having a false positive reading for HIV.

I have absolutely nothing to do with the collection of and/or testing of blood samples for HIV. In Mr. Patrick's case, I did not collect the blood sample, test the sample, send the sample off, or analyze the conclusions from the tested blood sample.

It was reported to me that Mr. Patrick had abnormal labs with regard to the [initial] HIV test. Therefore, on September 23, 2015, at 2:00 p.m., I had a personal face-to-face meeting with Mr. Patrick where I explained the lab results to him. My notes from that date state as follows:

CC:  Abnormal labs
ABI: 47 year old WM noted to have abnormal labs confirmed positive HIV. Denies any knowledge – or suspicion – states only had a couple of sexual partners. Patient made aware of negative status in 2013 – declines counseling. . . . No true expressions – no visible signs of disbelief. No questions asked. Patient aware of pending infectious disease clinics – all education complete – Marianne Baker

I was thereafter informed that further labs had been performed and that there was a negative HIV reading on the follow up labs. Therefore, I

had a follow-up meeting with Mr. Patrick on November 13, 2015 at 12:40 p.m.  My notes from that date state as follows:

> CC:  Corrected labs
> HPI:  47 year old WM called to physicals – lab labeling error resolved – patient notified of lab error – labs are all negative – very appreciative – stated he couldn't figure out how the HIV positive could be.  Provider apologized for the error . . . – no questions asked – Marianne Baker.

I have had no further communication with Mr. Patrick besides these two incidents where I reported the initial finding and thereafter the results of the follow-up lab.

When I followed up with Mr. Patrick, he at no time informed me that he had suffered any ill consequences of being informed of the positive HIV test on September 23, 2015.

I merely reported what had been reported to me to Mr. Patrick.

In my opinion, I at all times acted within the standard of care of nurse practitioners practicing nursing in the state of Alabama.

Doc. 15-2 at 3-6 (internal paragraph numbering omitted).

Under the circumstances of this case, the court concludes that the actions undertaken by the medical defendants did not subject Patrick to deliberate indifference.  Specifically, there is no evidence upon which the court can conclude that defendants Swinney, Baker, Jones or Temple acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  In addition, as discussed *infra* at 13-14, neither negligence in diagnosis nor medical malpractice constitute deliberate indifference actionable in a § 1983 case.  *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771.  Consequently, Patrick's deliberate indifference claims against the defendants arising actions undertaken based on the erroneous lab result indicating a positive result for HIV do

not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991).

Moreover, Patrick has failed to present any evidence showing the medical defendants knew that the manner in which they responded to the lab results created a substantial risk to his health and with this knowledge consciously disregarded the risk. The record is therefore devoid of evidence—significantly probative or otherwise—showing that defendants Swinney, Baker, Jones or Temple acted with deliberate indifference. Thus, summary judgment is due to be granted in favor of the medical defendants on Patrick's deliberate indifference claims.

### C. Cruel and Unusual Punishment

Patrick presents the conclusory allegation that the medical defendants subjected him to cruel and unusual punishment violative of the Eighth Amendment. For the reasons which follow, he is entitled to no relief on this claim.

Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes conditions or actions which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation[.]" *Id*. at 348 (citation omitted). For liability to attach, the challenged action must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Crosby*, 379 F.3d at 1289-1290.

To demonstrate cruel and unusual punishment violative of the Eighth Amendment, a prisoner must satisfy both objective and subjective elements. *Farmer*, 511 U.S. at 834. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment . . . outlaws [only] cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986). As the foregoing makes clear, a "[m]erely negligent [act] . . . does not justify liability under section 1983[.]" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

Patrick does not establish that the alleged unconstitutional actions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, the alleged consequences of the medical defendants' actions, though inconvenient and unpleasant, were not so extreme as to violate the Constitution. *See Baird*, 926 F.2d at 1289. Consequently, summary judgment is due to be granted in favor of defendants Swinney, Baker, Jones and Temple on Patrick's claim of cruel and unusual punishment.

## D. Supplemental Jurisdiction

Patrick seeks relief from this court on pendent state law claims of medical malpractice and negligence. However, review of any state law claim is appropriate only upon exercise of this court's supplemental jurisdiction. In the posture of this case, the court concludes that exercise of supplemental jurisdiction over Patrick's referenced state law claims is inappropriate.

> To exercise pendent jurisdiction [–or what is now referred to as supplemental jurisdiction–] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See generally* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

In removal cases where it is determined that the federal claim provides no basis for relief, the court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3) and remand the case to the appropriate state court. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 345 (1988) ("[A] federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain."). When determining whether to retain jurisdiction over pendent state law claims or remand these claims to the appropriate state court, the factors to consider are "economy, convenience, fairness and comity." 484 U.S. at 350. A review of these factors weighs in favor of remanding this case back to the state court for determination of the pendent state law claims.

Initially, the factors of economy and convenience weigh in favor of remand. This case has been in this court for only a short period of time, approximately two months, and other than entering standard procedural orders and issuing this Recommendation, the court has not invested significant time or resources in this case. *See Carnegie-Mellon*, 484 U.S. at 351 ("When the single federal law claim in the action [is] eliminated at an early stage of the litigation, the district court [has] a powerful reason to choose not to continue to exercise jurisdiction."); *Ansley v. Prof. Resources Mgmt. Inc.*, Civil Action No. 2:13-cv-00619-

WHA, 2013 WL 5775154, at *3 (M.D. Ala. Oct. 25, 2013) (same). Thus, remanding the case at this time will not constitute a significant waste of this court's judicial resources. Moreover, at this stage of the proceedings, remand of this case to the state court will not unduly inconvenience the parties. Principals of comity likewise weigh heavily in favor of remand as all remaining claims arise under Alabama law and are clearly "best suited for determination by a state court." *Lake Cty. v. NRG/Recovery Grp., Inc*., 144 F. Supp. 2d 1316, 1321 (M.D. Fla. 2001); *Ansley*, 2013 WL 5775154, at *3 (finding that where the only "remaining claims . . . concern interpretation and application of Alabama law . . . comity weighs in favor of remand."). Finally, the court finds that remand of this action will not result in unfairness to the parties.

For the foregoing reasons, the undersigned concludes that this court should decline to exercise supplemental jurisdiction over the state law claims presented by Patrick and remand this case to the Circuit Court of Montgomery County, Alabama, for further proceedings on such claims.

## V. CONCLUSION

Accordingly, it is the Recommendation of the Magistrate Judge that:

1. The defendants' motion for summary judgment be granted as to the plaintiff's Eighth Amendment claims of deliberate indifference and cruel and unusual punishment.

2. The Eighth Amendment claims be dismissed with prejudice.

3. This case, with respect to the plaintiff's pendent state law claims of medical malpractice and negligence be remanded back to the Circuit Court of Montgomery County,

Alabama for disposition as this court deems it inappropriate to exercise supplemental jurisdiction over these claims.

4.  This case be dismissed.

5.  No costs be taxed herein.

The parties may file objections to the Recommendation on or before May 22, 2017. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered by the court. Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 8th day of May, 2017.


_____/s/_____Wallace Capel, Jr._____
CHIEF UNITED STATES MAGISTRATE JUDGE